UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Eric Lichtenthal,

        Plaintiff,

**Hon. Hugh B. Scott**

06CV723A

v.

**Report
&
Recommendation**

County of Erie, et al.,

        Defendants.

Before the court are the defendants' respective motions for summary judgment (Docket Nos. 60 and 62).[1]

**Background**

The plaintiff, Eric Lichtenthal ("Lichtenthal") brings this action alleging that his constitutional rights were violated pursuant to 42 U.S.C. §1983. The plaintiff names the County of Erie, the Erie County Sheriff's Department, Erie County Deputy Sheriff Robert Ellis ("Ellis")(referred to collectively as the "County Defendants"), Bruce Luno ("Luno"), and James

---

[1] The defendants previously filed motions for summary judgment (Docket Nos. 20 and 43). Those motions were denied without prejudice to allow for discovery to take place. (Docket No. 59). The initial motions were renewed by letter incorporating the factual and legal arguments set forth in the original motions. (Docket No. 60 and 62). Thus, it is necessary to review the original motion papers (Docket No. 20 and 43) for the substantive arguments upon which the instant motions are based.

1

Kulick ("Kulick")[2] as defendants in this case. The plaintiff asserts that on September 25, 2004, he was a passenger in a van being driven by Kulick. Lichtenthal alleges that Kulick was driving while intoxicated and without a license. (Amended Complaint at ¶¶ 15 - 17). At some point, according to the plaintiff, Kulick parked the vehicle off of Mayo Road on property owned by defendant Luno. (Amended Complaint at ¶¶ 18-19). According to Lichtenthal, Kulick left the vehicle and went into Luno's house. At the same time, Luno called the police to report the car parked in his field. The plaintiff contends that after Luno called the police he realized that the driver of the van was Kulick, who happens to be Luno's nephew. (Amended Complaint at ¶¶ 20-23). Lichtenthal states that defendant Ellis responding to Luno's "911" call, arrived at the scene and discovered Lichtenthal sitting in the door well of the rear sliding door of the van. (Amended Complaint at ¶ 24). Lichtenthal alleges that he denied that he was the operator of the van. (Amended Complaint at ¶ 26). The plaintiff states that he then "insulted Deputy Ellis using vulgar and profane language." (Amended Complaint at pp 27). According to Lichtenthal, Luno then advised Ellis that Lichtenthal was "behind the wheel" of the van with an open bottle of vodka. (Amended Complaint at ¶ 28). Lichtenthal contends that Luno knew that the statements were false and that he made the statements to cover up his nephew's involvement. (Amended Complaint at ¶ 29). The plaintiff asserts that Ellis "unreasonably chose to act solely upon the report of defendant Luno without further independent investigation" because he was angry at the plaintiff's vulgar outburst. (Amended Complaint at ¶¶ 30-32). The plaintiff also contends that Ellis made false statements, in his police report to the effect that he discovered Lichtenthal

---

[2] The record in this case does not reflect that Kulick was ever served with a summons and complaint in this matter. Kulick has not appeared in this action. It appears that the plaintiff has abandoned any claim against Kulick.

behind the wheel of the van and that the plaintiff admitted that he was alone in the van. (Amended Complaint at ¶¶ 34-36).

Luno states that he was at his daughter's house down the road when he initially observed the van being driven toward his property. When he did not see the van turn, he went to his home and observed "Lictenthal passed out behind the wheel of the car and that there was a bottle of vodka on his lap. The engine was running." (Docket No. 22 at ¶ 6). Luno states that he turned the engine off, "took the vodka bottle away and called 911 in order to get the vehicle off [his] property." Id.

Ellis states that the Erie County Sheriff's Office received a complaint from Luno at 6:39 p.m. on September 25, 2004 "that there was a drunk passed out in a van in the yard." (Docket No. 46 at ¶ 2). Ellis stated that he was assigned to respond to the complaint and arrived at the scene at approximately 6:51 p.m. Id. According to Ellis, when he arrived at the scene he "saw the van and observed the plaintiff sitting in the driver's seat with his feet outside the van." (Docket No. 46 at ¶ 3). He did not observe the plaintiff operating the van. (Docket No. 46 at ¶ 4). He asked Lichtenthal for his license and registration and confirmed that Lichtenthal was the owner of the van. (Docket No. 46 at ¶¶ 5). Ellis states that he observed that Lichtenthal had urinated on himself and that he detected the odor of alcohol on the plaintiff's breath, observed plaintiff's blood shot eyes, very slurred speech and poor motor coordination. (Docket No. 46 at ¶6). Ellis testified that he asked the plaintiff if he had been driving the van and that Lichtenthal responded "yes." (Docket No. 46 at ¶ 7). Ellis asked the plaintiff where he had come from and whether he had anything to drink. According to Ellis, the plaintiff responded that he had come from Colden and that he had "two beers." (Docket No. 46 at ¶7). Ellis stated that Luno came out

3

and advised Ellis that he saw Lichtenthal passed out in the driver's seat with a bottle of vodka between his legs; that he removed the keys and vodka bottle. (Docket No. 46 at ¶9). Ellis testified that Luno also advised him that Luno's nephew had been a passenger in the van. (Docket No. 46 at ¶ 10). Ellis stated that based upon the information he had at that time, he was satisfied that the plaintiff was intoxicated; that the plaintiff owned the van; and that he had been driving the car. Ellis placed Lichtenthal under arrest for driving while intoxicated. (Docket No. 46 at ¶ 10). According to Ellis, Lichtenthal never advised Ellis that he was not the driver of the van or that someone else, namely Kulick, had been driving the van. (Docket No. 46 at ¶ 11). Ellis stated that he had never met Kulick, Luno or Lichtenthal before this incident. (Docket No. 46 at ¶ 12). Further, Ellis states that Lichtenthal did not give him a hard time or utter any insulting words to him at the scene or before Lichtenthal was placed under arrest, but that the plaintiff did so after Lichtenthal was taken to the Sheriff's substation. (Docket No. 46 at ¶ 13). Ellis states that at the substation, after Lichtenthal was provided his <u>Miranda</u> warnings and warnings about the consequences of refusing to take a breathalyser, Lichtenthal refused to take a breathalyser and made several vulgar remarks. (Docket No. 46 at ¶ 14). Lichtenthal appeared before Acting Supreme Court Justice Ronald Tills, who set bail at $20,000. Ellis states that neither Judge Tills, nor the District Attorney's Office consulted him with respect to what he believed would be a reasonable bail. (Docket No. 46 at ¶17). Finally, Ellis states that he has never been instructed that it is proper to arrest a person because the person uses insulting or profane language toward him. (Docket No. 46 at ¶ 18).

The plaintiff's first cause of action is against Erie County, the Erie County Sheriff's Department and Ellis, alleging that Ellis arrested Lichtenthal without probable cause and that this

was done "pursuant to a policy and custom" of Erie County and the Erie County Sheriff's Office to tolerate the arrest of persons without probable cause "where such persons use profane and insulting language directed at Sheriff's Deputies." (Amended Complaint at ¶ 42). In the second cause of action, the plaintiff asserts that Ellis arrested him in retaliation for the use of his vulgar language and in violation of his rights under the Fourth and Fourteenth Amendments. (Amended Complaint at ¶¶ 43-50). As a third cause of action, Lichtenthal alleges that Ellis, Kulick and Luno conspired to prosecute him for violating §1192(3) of the New York Vehicle and Traffic Law in violation of his civil rights. (Amended Complaint at ¶¶ 51-64).

The defendants move for summary judgment.

Discussion

**Standard of Review**

Summary judgment is appropriate where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. See Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F. 2d 186, 188 (2nd Cir. 1992) citing Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The non-moving party must, "demonstrate to the court the existence of a genuine issue of material fact." Lendino v. Trans Union Credit Information, Co., 970 F.2d 1110, 1112 (2nd Cir. 1992), citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). A fact is material:

> when its resolution would "affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

General Electric Company v. New York State Department of Labor, 936 F.2d 1448, 1452 (2nd Cir. 1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The non-moving party must come forward with enough evidence to support a jury verdict ... and the ... motion will not be defeated merely ... on the basis of conjecture or surmise." Trans Sport, supra, 964 F.2d at 188. Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc., 235 F.3d 53 (2nd Cir. 2000) quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**Claims Against Luno**

In response to the instant motion, Lichtenthal has represented that a stipulation of voluntary discontinuance was being circulated as to the claims against Luno, making "the motion by Defendant Luno moot." (Docket No. 73 at ¶ 4). The plaintiff does not otherwise respond to the motion filed on behalf of Luno. Thus, Luno's motion for summary judgment is uncontested and may be granted on that basis.

It does not appear that the stipulation of discontinuance has yet been filed in this case.[3] In any event, Luno's motion for summary judgment should be granted. As an initial matter, Luno contends that a §1983 action may not be maintained against him inasmuch as he is not a state actor. It is well-settled that private citizens are not subject to liability under § 1983 if they do not act "under color of any statute, ordinance, regulation, custom, or usage of any State." 42 U.S.C. §

---

[3] A copy of the stipulation of discontinuance, signed by the plaintiff's counsel, but otherwise unexecuted, is attached as Exhibit A to Lichtenthal's response to the instant motions. (Docket No. 73).

1983. A private citizen will not be subject to § 1983 liability unless he has conspired with state officials to deprive a plaintiff of his constitutional rights. Fielding v. Tollaksen, 2007 WL 4386190, *1 (2d Cir. 2007) citing Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir.1993) ("A private individual may be subject to liability under this section if he or she willfully collaborated with an official state actor in the deprivation of the federal right."). To survive summary judgment on a § 1983 conspiracy claim, a plaintiff must show "(1) an agreement between ... a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir.1999); Ostensen v. Suffolk County, 2007 WL 1492856, 2 (2d Cir. 2007). The Second Circuit has recognized that "conspiracies are by their very nature secretive operations," and "may have to be proven by circumstantial, rather than direct, evidence." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir.1999). Even so, "[i]t is incumbent on a plaintiff to state more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of his constitutional rights." Polur v. Raffe, 912 F.2d 52, 56 (2d Cir.1990). "Diffuse and expansive allegations are insufficient" to sustain a conspiracy claim, "unless amplified by specific instances of misconduct." Ciambriello v. County of Nassau, 292 F.3d 307, 325 (2d Cir.2002); Gillard v. Gaffney, 2009 WL 2045151, *4 (E.D.N.Y.,2009). It is well-settled that although "[a] plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when [it] pleads conspiracy, ... the pleadings must present facts tending to show agreement and concerted action." *McIntyre v. Longwood Cent. Sch. Dist.,* 2008 WL 850263, *11 (E.D.N.Y. 2008); Seymour's Boatyard, Inc. v. Town of Huntington, 2009 WL 1514610, *11 (E.D.N.Y.,2009).

7

In the instant case, Luno has submitted an affidavit testifying as to his observances of Lichtenthal in the van and the statements Luno made to Ellis. As noted above, Luno testified that he saw Lichtenthal in the driver's seat of the van, with the engine running and a bottle of vodka in his lap; that he shut off the engine, took the bottle of vodka and called 911. (Docket No. 22 at ¶6). This evidence is not controverted by Lichtenthal. If undisputed material facts are properly placed before the court by the moving party, those facts will be deemed admitted, unless they are properly controverted by the non-moving party." Glazer v. Formica Corp., 964 F.2d 149, 154 (2d Cir. 1992) (citing Dusanenko v. Maloney, 726 F.2d 82 (2d Cir. 1984). These undisputed material facts should be deemed admitted by the plaintiff. This admitted conduct, without more, is insufficient, as a matter of law, to support the plaintiff's claim that Luno conspired with Ellis to violate Lichtenthal's §1983 rights.

In an attempt to raise a material question of fact, the plaintiff points to the fact that Luno stated to a private investigator, and later testified at the Wade hearing held in the state court prosecution against Lichtenthal, that when he saw the van pass by while he was at his daughter's house, he noticed that the driver was clean shaven. (Docket No. 73 at ¶¶ 22-26). Luno acknowledged that Lichtenthal was not clean shaven at the time of the incident. Id.[4] The plaintiff also points to alleged inconsistencies in the various statements made by Luno as to whether Lichtenthal was in the driver's seat or outside of the van at the time Ellis arrived. (Docket No. 73

---

[4] Luno testified that "just a few days before the trial" he had "a vision" of the van. In this vision, he was at his daughter's house; the van that drove by the house was driven by a "clean shaven man." (Docket No. 73, Exhibit B page 14-17). It was only then that he realized that it was his nephew, and not Lichtenthal, who was driving the van on September 25, 2004. (Docket No. 73, Exhibit B at page 26). In addition to being Luno's nephew's friend, Luno testified that Lichtenthal is friends with Luno's brother-in-law. (Docket No. 73, Exhibit B at page 22).

8

at ¶ 29-31). It is not apparent that these statements are necessarily inconsistent. In any event, the alleged inconsistencies in these statements are insufficient to sustain a conspiracy claim. It is undisputed that Luno and Ellis were not acquainted with each other at the time of the incident. The plaintiff has not presented any evidence or basis upon which a trier of fact could conclude that any *collusion or agreement* existed between Luno and Ellis to violate Lichtenthal's constitutional rights. <u>Bradley v. City of New York</u>, 2009 WL 1703237, *4 (E.D.N.Y.,2009) citing <u>Farbstein v. Hicksville Pub. Library</u>, 254 Fed. Appx. 50, 51 (2d Cir. Nov.15, 2007) (summary order) (dismissing conspiracy claim where the "bare allegation of conspiracy [was] supported only by an allegation of conduct that is readily explained as individual action" and plaintiff failed to allege "a factual basis supporting a meeting of the minds ... to achieve the charged unlawful end").

Based on the above, it is recommended that Luno's motion for summary judgment be granted.

**Claims Against the County Defendants**

The plaintiff asserts claims against the County of Erie and the Erie County Sheriff's Department, based upon the alleged existence of "a policy and custom of the defendants ... to tolerate the arrest of persons without probable cause where such persons use profane and insulting language directed at Sheriff's Deputies and that said Defendants intentionally trained and supervised the Sheriff's Deputies under their command and supervision in such a manner as to ratify and tolerate the arrest, regardless of the presence of probable cause." (Amended Complaint at ¶ 42). To state a Section 1983 claim against a municipality, the plaintiff must

allege that the deprivation of his or her constitutional right was caused by a custom or policy of the municipality, as municipal liability may not simply be based on a theory of *respondeat superior*. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). A policy, custom, or practice of the municipal entity may be inferred where "the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir.2004)(internal quotation marks omitted). In addition, a municipality may be held liable for the acts of a municipal official who possessed final policymaking authority with respect to the challenged conduct. See Jeffes v. Barnes, 208 F.3d 49, 57-58 (2d Cir.2000). The defendants contend that Lichtenthal cannot prove the existence of any policy or custom in this case. (Docket No. 47 at page 9). In response to the instant motion, the plaintiff has failed to present any evidence in support of the proposition that a policy, practice or custom as alleged in the Amended Complaint exists. In fact, the plaintiff's response to the instant motion does not address this argument in any way. Thus, to the extent that the plaintiff asserts claims against Erie County or the Eric County Sheriff's Department, those claims should be dismissed.

The gravamen of the plaintiff's claims against Ellis in both the First and Second Causes of Action, are that Ellis lacked probable cause to arrest him. In essence, the plaintiff alleges a claim of malicious prosecution. Under New York law, "[t]he elements of an action for malicious prosecution are (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." Colon v. City of New York, 60 N.Y.2d 78, 82 (1983). Liability for the tort of malicious prosecution also gives rise to liability under 42 U.S.C. § 1983. Cook v. Sheldon, 41 F.3d 73, 77-79 (2d. Cir. 1994). It is well-settled that the existence of

probable cause is a complete defense to a claim of malicious prosecution in New York. Colon, 60 N.Y.2d at 82 (discussing malicious prosecution claims). Under New York law, indictment by a grand jury creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Savino v. City of New York, 331 F.3d 63, 72-73 (2d. Cir. 2003) quoting Colon, 60 N.Y.2d at 83. It is undisputed that Lichtenthal was indicted by the Erie County Grand Jury. (See Defendants Statement of Undisputed Facts, Docket No. 44 at ¶ 19)[5] Here, Lichtenthal presents no evidence to suggest conduct that the indictment was obtained by fraud, perjury, the suppression of evidence or other police conduct taken in bad faith. In fact, the plaintiff points to the exculpatory nature of Luno's Grand Jury testimony. (Docket No. 73 at ¶ 30).[6]

---

[5] The plaintiff has expressly stated that he has no objection to the defendants' statement of undisputed facts, but denies that such statement is sufficient to demonstrate the absence of a genuine issue of fact. (Docket No. 53 at ¶ 45). Thus, the defendants statement of undisputed facts should be deemed admitted.

[6] Luno's Grand Jury testimony, in part (Docket No. 73, Exhibit F at pages 4-7), was as follows:
Q: Okay. Now, what you just mentioned, what exactly did you see? What happened, if anything?
A: Originally the car went down the road or the van and then came back, went out in the field, drive around in the field behind the house, went back in the orad and went down to the end of the road where I live.
...
Q: Okay. So what happened after that?
A: Well, I waited a little while, because being a dead end road, I thought it would come back. It didn't come back, so I drove down to my place. I seen where it had drove out into my field and turned around and I backed the car up and looked to see if it was in the woods, tracks going up in the woods, there wasn't, so I drove all the way down to my house and it was on the lawn by my house.
...
Q: Okay. And did you go up to the vehicle then?

To the extent that the plaintiff's claim may be considered to be that of false arrest,[7] the record reflects that Ellis possessed probable cause to believe that Lichtenthal had committed the crime of driving while intoxicated. Probable cause exists when an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir.2000). Courts evaluating probable cause for an arrest must consider those facts available to the officer at the time of the arrest and immediately before it. Warren v. Dwyer, 906 F.2d 70, 73 (2d Cir.), cert. denied, 498 U.S. 967 (1990). Probable cause exists when there are "facts and circumstances 'sufficient to warrant a prudent man that the [suspect] had committed or was committing an offense.' " Gerstein v. Pugh, 420 U.S. 103, 111 (1975). The probable cause inquiry is an objective one. Dukes v. City of New York, 879 F.Supp. 335, 340 (S.D.N.Y. 2005). Accordingly, "[p]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." Bernard v. United States, 25 F.3d 98, 102-03 (2d. Cir. 2003). Here, it is undisputed that Ellis was responding to a 911 call that the van had been observed driving

---

A: Yes I did.
Q: Okay. What did you personally observe then?
A: I personally observed this man sitting in the car behind the wheel. he had a bottle of vodka in his lap. The keys were in the car. I took the keys out and took the bottle of vodka away and went in the house because my nephew was with him and my daughter was in the house and I talked with him and then I left.

[7] To state a claim for false arrest under New York law, a plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Bernard v. United States, 25 F.3d 98, 102 (2d. Cir. 2003). As with malicious prosecution, liability for false arrest also gives rise to liability under 42 U.S.C. § 1983. Savino, 331 F.3d. at 75.

erratically. The plaintiff admits that, by the time Ellis arrived at the scene, Lichtenthal was sitting in the van alone; that he had taken the keys out of the ignition; that he did not know where he was; that he had urinated on himself; that he was intoxicated; that Ellis asked him for his license and registration (which he provided); that he never told Ellis that someone else was driving the van; and that he never told Ellis that he was *not* the driver of the van. (Docket No. 44 at ¶¶13-16). Ellis also testified that he asked Lichtenthal if he had been driving, and that Lichtenthal stated: "yes." (Docket No. 47 at ¶ 7). The plaintiff disputes that he was asked whether he was driving.[8] Notwithstanding such dispute, even absent an affirmative response by the plaintiff as to whether he was driving, under these circumstances, it was reasonable for Ellis to conclude that Lichtenthal was the driver of the van and that he had been driving while intoxicated.

Finally, as discussed above, the plaintiff has failed, as a matter of law, to present evidence upon which a trier of fact could conclude that a conspiracy existed between Ellis and others to violate his civil rights. Summary judgment dismissing the claims asserted against Ellis is warranted.

## Conclusion

It is recommended that the respective motions for summary judgment be granted and that the complaint be dismissed in its entirety.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the

---

[8] Lichtenthal testified that he was "fading in and out of consciousness" during the incident. (Docket No. 34 at page 47).

Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
August 11, 2009